# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CARL SMITH, § § *Plaintiff*, § § versus § § CAROLYN W. COLVIN, § Acting Commissioner of § Social Security, § § *Defendant*. § | CIVIL ACTION NO. 5:12-1879 |

## REPORT AND RECOMMENDATION

Carl Smith ("Smith") seeks review of an adverse decision on his application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 401 *et seq*.

### I.  Judicial Review

A reviewing court's limited role under 42 U.S.C. § 405(g) is to determine whether (a) the Commissioner applied proper legal standards and (b) the decision is supported by substantial evidence. *See Lamay v. Commissioner of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009), *cert. denied*, 559 U.S. 962 (2010); *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also* 42 U.S.C. § 405(g). Courts cannot retry factual issues *de novo* or substitute their interpretations of administrative records for that of the Commissioner when substantial evidence supports the decision. *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998). Neither can they overturn administrative rulings because they would have reached

different conclusions had the matter come before them in the first instance. *See Campbell v. Astrue*, 465 Fed. App'x 4, 5 (2d Cir. 2012) (summary order).

Smith represented himself before the Commissioner, and also proceeds *pro se* here. Litigants in federal court have a statutory right to act as their own counsel,[1] but such circumstance poses a special challenge. No statute, regulation or court decision prescribes a precise analytical model for reviewing *pro se* actions seeking to reverse adverse administrative decisions by the Commissioner of Social Security. General principles, however, provide meaningful guidance. First, submissions by *pro se* litigants are to be liberally construed. A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). The governing circuit court of appeals, moreover, directs that courts construe *pro se* pleadings "to raise the strongest arguments that they suggest." *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (emphasis omitted). Second, fundamental fairness and interests of justice require that courts not disregard obvious legal errors, even though a lay litigant's ignorance of the law may cause such errors to go unrecognized. Third, courts always must engage in a "searching inquiry" when deciding whether substantial evidence supports an administrative fact finding, whether or not a *pro se* litigant is perceptive enough to identify a specific evidentiary deficiency. *See Monette v. Astrue*, 269 Fed. App'x 109, 110 (2d Cir. 2008) (summary order) (reviewing court must "conduct a searching inquiry and . . . scrutinize the entire record, having in mind that the Social Security Act . . . is remedial in purpose") (internal quotations and citations omitted).

---

[1] *See* 28 U.S.C. § 1654.

## II. Background

Smith claims disability due to mental impairments including depression, panic attacks, anxiety and substance abuse. (T. 151).[2] After an evidentiary hearing, administrative law judge, Rosanne M. Dummer ("ALJ Dummer"), denied Smith's application in a 16-page, single-spaced, thorough and well-reasoned decision. (T. 15-30). The Appeals Council declined review; Smith then instituted this proceeding.

## III. Commissioner's Decision

ALJ Dummer employed a five-step sequential evaluation procedure prescribed by regulation and approved by courts as a fair and just way to determine disability applications in conformity with the Social Security Act.[3] At Step 3, ALJ Dummer found that Smith *is* disabled effectively due to mental impairments, including drug and alcohol abuse disorder, that produce associated symptoms so severe that they match the Commissioner's Listings of presumptively disabling impairments.[4] ALJ Dummer, however, did not automatically approve Smith's claim (as usually occurs when there is an affirmative Step 3 finding) because of the evidence of drug addiction and

---

[2] "T." followed by a number refers to the page of the administrative record. (Dkt. No. 12).

[3] The procedure is "sequential" in the sense that when a decision can be reached at an early step, remaining steps are not considered. *See* 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461 (1983)). A full discussion of the Commissioner's five-step process is contained in *Christiana v. Commissioner of Soc. Sec. Admin.*, No. 1:05-CV-932, 2008 WL 759076, at *1-2 (N.D.N.Y. Mar. 19, 2008).

[4] The Commissioner publishes a series of listed impairments describing a variety of physical and mental conditions, indexed according to the body system affected. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). Listed impairments are presumptively disabling. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii), (d).

ALJ Dummer found that Smith's mental impairments satisfy requirements of Listing 12.04 (affective disorder), Listing 12.06 (anxiety-related disorder), and Listing 12.09 (substance addiction disorder).

alcoholism. Instead, she continued with sequential analysis to determine whether Smith's disability would persist if he stopped using drugs and alcohol.

Under resumed analysis, ALJ Dummer found that *if Smith were abstinent,* (a) he would still have severe mental impairments consisting of post-traumatic stress disorder ("PTSD"), anxiety and depression; (b) his symptoms would be less severe, and his difficulties with social functioning, activities of daily living and repeated episodes of decompensation would improve from "marked" to only "moderate,"[5] making a Step 3 finding of presumptive disability inappropriate; (c) Smith would retain "residual functional capacity" to perform a full range of work at all exertional levels, reduced by nonexertional limitations that would restrict him to unskilled work;[6] (d) he could no longer perform his past jobs, all

---

[5] ALJ Dummer based this finding in reliance on opinions expressed by a State Agency consultative psychologist, Dr. E. Kamin, in a Psychiatric Review Technique Form and Mental Residual Functional Capacity Assessment Form.(T. 284-297, 298-301). Dr. Kamin opined that "with continued abstinence and sobriety, clmnt (*sic* for "claimant")could meet the basic mental demands of unskilled work in a low contact setting." (T. 300). He also assessed that Smith's functional limitations would be only "mild" and "moderate" in severity. (T. 294). Dr. Kamin's assessment was made when Smith was "in remission." The record does not reflect whether Dr. Kamin examined or interviewed Smith, or simply reviewed Smith's longitudinal medical record.

[6] "Residual functional capacity" refers to what persons can still do in work settings despite physical and/or mental limitations caused by their impairments and related symptoms, such as pain. *See* 20 C.F.R. § 404.1545(a)(1); Regarding mental impairments, an administrative law judge must take into consideration limitations on a claimant's "understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting ...." *Id.*, at § 404.1545(c).

ALJ Dummer's complete "residual functional capacity" finding was:

> If the claimant stopped the substance use, the claimant would have the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant must avoid concentrated exposure to the hazards of work involving dangerous moving machinery and unprotected heights. Secondary to mental limitations, the claimant is able to understand, remember, and carry out simple instructions, sustain attention for two hour segments at a time, tolerate contact with co-workers, supervisors and the general public in a low contact setting, and adapt as needed in work settings involving routine adjustments within these parameters.

(T. 22).

of which were in the skilled category; but (e) he could perform alternative and available unskilled jobs in several exertional categories.[7]

Based on these findings, ALJ Dummer concluded that Smith *would not be disabled* if he stopped using drugs or alcohol. Thus, drug addiction and alcoholism were contributing factors material to Smith's disability. ALJ Dummer then denied Smith's claim because Smith could not be considered disabled within the meaning of the Social Security Act. (T. 30).

## IV. Points of Alleged Error

In his "Statement of Issues," Smith proffers two alleged errors quoted verbatim as follows:

1. Plaintiff contends that the AJL (*sic*) has disregarded substantial medical evidence of several of the plaintiffs (*sic*) attending and examining physicians.
2. Plaintiff contends that the Appeals Council did not consider credible medical evidence critical in making an informed decision.

(Dkt. No. 14, pp. 1, 3-8).

## V. Discussion and Analysis

Under liberal construction, Smith raises (perhaps inadvertently) some cognizable, contextually-relevant and non-frivolous issues. Each such issue has received thoughtful consideration and analysis. None warrants a conclusion that ALJ Dummer failed to apply correct principles of law or support her

---

[7] A vocational expert, Dr. Bassey A. Duke, Ed.D. ("VE Duke"), testified that a person with Smith's residual functional capacity and limitations can perform work as a surveillance system monitor, assembler of small products and touch-up screener at the sedentary exertional level; as a mail clerk, non-postal, stock checker apparel, and routing clerk at the light exertional level; and as a hand packager, dry cleaning worker; and production assembler helper at the medium exertional level. (T. 55-58). ALJ Dummer accepted this testimony as credible.

findings with substantial evidence based on the evidentiary record before her. Accordingly, ALJ Dummer committed no reversible error.

This case, nevertheless, warrants remand for consideration of additional new and material evidence that ALJ Dummer did not have an opportunity to consider. That evidence and the reasons for remanding so that it can be considered are discussed below.

A. *Effect of Substance Abuse*

As a threshold matter, it is appropriate to describe the decisional dynamics at play when ALJ Dummer's evaluated Smith's disability claim.

1. <u>Statute, Regulation and Judicial Interpretation</u>

Title II of the Social Security Act, originally enacted in 1935, establishes a disability insurance program. *See Bowen v. Galbreath*, 485 U.S. 74, 75 (1988). Thereunder, an individual who (a) is "insured" (by virtue of premiums paid *via* payroll deductions or self-employment taxes), (b) has not yet attained "full retirement age," and (c) is "under a disability" as that term is defined in the Act may receive a monthly pecuniary benefit.

For persons other than blind individuals over the age of 55, the Act defines disability as *"inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."* See 42 U.S.C. § 423(d)(1)(A). In 1996, however, Congress enacted the Contract with America Advancement Act ("CAAA"), to provide that *"[a]n individual shall not be considered … disabled … if alcoholism or drug addiction would … be a contributing factor material to the*

*Commissioner's determination that the individual is disabled."* Pub.L. No. 104–121 § 105(a)(1), 110 Stat. 847 (codified at 42 U.S.C. § 423(d)(2)(C)). This amendment, sometimes referred to in interpretive jurisprudence as the "DAA (drug addiction or alcoholism) Amendment" *alters* the traditional definition of disability. *Cage v. Commissioner of Soc. Sec.*, 692 F.3d 118, 123-24 (2d Cir. 2012), *cert. denied*, ___ U.S. ___, 133 S. Ct. 2881 (2013).

To implement the DAA Amendment, the Commissioner promulgated a formal regulation, and also published an interpretive policy ruling to guide administrative adjudicators in evaluating cases with evidentiary records showing medical evidence of substance abuse. 20 C.F.R. § 404.1535(b)(1); *see also* SSR 13-2p, TITLES II AND XVI: EVALUATING CASES INVOLVING DRUG ADDICTION AND ALCOHOLISM (DAA), 2013 WL 621536, at *4 (S.S.A. Feb. 20, 2013). In such cases, even though claimants initially meet the traditional definition of "disabled" (inability to engage in substantial gainful activity), administrative adjudicators must conduct a secondary analysis to determine whether drug addition or alcoholism is material to an initial finding of disability.

A "key factor" in such secondary analysis is whether claimants would still be found disabled if they stopped using drugs or alcohol. *See* 20 C.F.R. § 404.1535(b)(2). Administrative adjudicators first determine whether physical and mental limitations would remain in the absence of substance abuse. If so, they then decide whether those remaining limitations are disabling on their own. If so, claimants are considered disabled within the meaning of the Act notwithstanding their drug addiction or alcoholism. If not, alcohol or substance abuse is considered material, and claimants are not eligible for benefits. 20 C.F.R. § 404.1535(b)(2)(ii).

The DAA Amendment does not specify who bears the burden of proof on materiality. Consequently, this issue was left to be decided by courts through interpretive jurisprudence. In this circuit, claimants bear the burden of proving that their drug addiction and alcoholism are not material to determinations that they are disabled. *Cage*, 692 F.3d at 123. Another issue settled in *Cage* is whether medical opinion specifically addressing the materiality issue is necessary. *Cage* decided that predictive medical opinions are not essential. Rather, a materiality finding can be based on the record as a whole. *Id.* at 126-27.

2. Impact

Under the DAA Amendment, a grim prospect arises that insured claimants who conclusively demonstrate that they cannot engage in any substantial gainful activity by reason of medically determinable physical or mental impairments are, nevertheless, ineligible for disability insurance benefits because their drug addiction and alcoholism contribute materially to their disability. Such results can be harsh and tragic, and, unfortunately for Smith, that is exactly what happened to him.[8]

The DAA Amendment, nonetheless, has withstood constitutional challenges. Courts conclude that Congress has a legitimate interest in discouraging drug and alcohol use, and that the DAA Amendment is rationally related to that purpose "in that it withholds social security benefits from those who likely would use the funds to purchase alcohol or drugs." *Mitchell v.*

---

[8] Denial of Smith's claim for Social Security benefits does not leave him completely destitute. On May 25, 2011, Smith was granted a 70% disability rating by the Department of Veteran Affairs. (T. 524-25, 531).

*Commissioner of the Soc. Sec. Admin.*, 182 F.3d 272, 275 (4th Cir.), *cert. denied*, 528 U.S. 944 (1999). Consequently, the DAA Amendment does not violate the Equal Protection Clause of the 14th Amendment. *Id; see also Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001); *Watson v. Social Sec. Admin.*, No. 2000 WL 303000, 208 F.3d 216, 216 (6th Cir. Mar. 14, 2000).

*B.     Remand for Taking Additional Evidence*

Smith argues that "the Appeals Council did not consider credible medical evidence critical in making an informed decision." Smith proffers two items of medical evidence, identified and discussed below, that were not before or considered by either ALJ Dummer or the Appeals Council. For all practical purposes, those items are presented for the first time to this court. Accordingly, the court must first identify and articulate legal standards governing this circumstance.

1. <u>"Sentence Six" Remand</u>

Judicial review of final decisions of the Commissioner is authorized in 42 U.S.C. § 405(g). The sixth sentence of that section provides:

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security . . . .

42 U.S.C. § 405(g). Congress, however, amended this provision in 1980 to add a limiting clause. Under that amendment, reviewing courts now may order that additional evidence be taken before the Commissioner:

> only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. . . .

*Id*. Congress thus made it "unmistakably clear that it intended to limit the power of district courts to order remands for 'new evidence' in Social Security

cases." *See Melkonyan v. Sullivan*, 501 U.S. 89, 100-01 (1991). Congress also reaffirmed and strengthened its intent that decisions of the Commissioner be final except in limited circumstances. *See Firpo v. Chater*, 100 F.3d 943, 1996 WL 49258, at *3 (2d Cir. 1996) ("[c]oncerns for finality dictate that claimants be given a single opportunity to prove their entitlement to benefits for a particular period"); *Tirado v. Bowen*, 842 F.2d 595, 596 (2d Cir. 1988) ("claimants ordinarily should have but one opportunity to prove entitlement to benefits, otherwise disability administrative proceedings would be an unending merry-go-round with no finality to administrative and judicial determinations").

To satisfy post-amendment statutory requirements, a proponent of remand for consideration of additional evidence, must show that such evidence is:

> (1) "new" and not merely cumulative of what is already in the record, and that it is (2) material, that is, both relevant to the claimant's condition during the time period for which benefits were denied and probative. The concept of materiality requires, in addition, a reasonable possibility that the new evidence would have influenced the [Commissioner] to decide claimant's application differently. Finally, a claimant must show (3) good cause for failure to present the evidence earlier.

*Tirado*, 842 F.2d at 597 (internal citations omitted); *see also Mulrain v. Commissioner of Soc. Sec.*, 431 Fed. App'x 38, 39 (2d Cir. 2011) (summary order); *Lisa v. Secretary of Health & Human Servs.*, 940 F.2d 40, 43 (2d Cir. 1991).

As one court facilely put it, one who seeks a new-evidence remand must satisfy a "conjunctive threefold requirement." *Cruz-Santos v. Callahan*, No. Civ. A. 97-439, 1998 WL 175936, at *2 (D. N.J. Apr. 7, 1998). In other words, remand for taking of additional evidence is appropriate only when a claimant satisfies *all three criteria. See id*; *see generally Jones v. Sullivan*, 949 F.2d 57, 60 (2d Cir. 1991) (three-pronged requirement for sentence six remand).

2. Dr. Bates's April 19, 2011 Disability Benefits Questionnaire

Smith attaches to his court brief a "Disability Benefits Questionnaire Initial Post Traumatic Stress Disorder (PTSD)" dated April 19, 2011, signed by Veterans Affairs psychologist, Dr. Debbie Bates, Ph.D. (Dkt. No. 14, pp. 10-28). This document is not in the official administrative record furnished to the court. Therein, Dr. Bates sets forth Smith's diagnoses, treatment history, symptoms, and history of PTSD and other conditions, including substance abuse. (*Id*.).

Although Smith attached this document to his brief, he does not otherwise mention it, or use it to support any particular argument. But, whatever Smith may have in mind, this document is not "new," as it existed before the administrative evidentiary hearing on August 31, 2011. This information also is not "material" because it is cumulative of undisputed medical evidence already contained in the record, specifically, Smith's May 25, 2011 VA Rating Decision. (T. 524-31). Under these circumstances, Dr. Bates's questionnaire does not warrant a remand of the case for consideration of additional evidence. *See Lisa*, 940 F.2d at 43; *Tirado*, 842 F.2d at 597.

2. Dr. MacMaster's 11/2/12 Medical Source Statement

Of much more significance is a "Medical Source Statement of Ability to do Work-Related Activities (Mental)" dated November 2, 2012, signed by a Veterans Affairs psychiatry resident, Dr. Eric MacMaster, M.D. (T. 8-10). This document was never presented to or considered by ALJ Dummer or the Appeals Council (because it did not yet exist), but, inexplicably, was sent to the court along with the Commissioner's official evidentiary transcript.

Dr. MacMaster expresses two significant opinions. First, he opines that *since August 9, 2010*, Smith has exhibited *marked limitations* in his ability to interact appropriately with the public, interact appropriately with supervisor(s), and respond appropriately to usual work situations and to changes in a routine work setting. (T. 9). Second, he opines that Smith's alcohol and/or substance abuse *do not* contribute to any of Smith's limitations. (*Id.*). When expressing these opinions, Dr. MacMaster expressly affirmed that he had sufficient information to form an opinion with a reasonable degree of medical or psychological certainty as to Smith's past limitations. (*Id.*).

  a. *The Evidence is New*

Because Dr. MacMaster's Medical Source Statement dated November 2, 2012, did not exist either before ALJ Dummer issued her decision (*i.e.*, August 31, 2011) or before the Appeals Council denied review (*i.e.*, October 25, 2012), there is no question that it is new evidence. *See Pollard v. Halter*, 377 F.3d 183, 193-94 (2d Cir. 2004). It also is not merely cumulative of what already is in the record. In that record, no evidence suggested that drug addiction and alcoholism were not contributing factors material to Smith's disability. Dr. MacMaster's opinions, however, constitute new, direct and affirmative evidence to that effect.

  b. *The Evidence is Material*

Dr. MacMaster's opinions relate temporally to a date *commencing* August 9, 2010, and continuing through November 12, 2012. Thus, they are relevant to Smith's condition during the time for which benefits were denied (period ending on or before August 31, 2011). It is probative because it suggests that Smith's innate limitations are more severe than those found by nonexamining consultative psychologist Dr. Kamin in his Psychiatric Review Technique and

Mental Residual Functional Capacity Assessment dated September 9, 2010. (T. 284-297, 298-301). Indeed, Dr. MacMaster's diagnoses, if accepted, might even support a Step 3 finding of presumptive disability under Listings 12.04 (affective disorders) and 12.06 (anxiety-related disorders), irrespective of drug addiction and alcoholism.[9] In other words, Dr. MacMaster's opinion is highly probative because its import is that DAA *does not* contribute materially to Smith's disability. (T. 9).

In addition, there is a reasonable possibility that Dr. MacMaster's evidence would influence the Commissioner to decide Smith's application differently. Dr. MacMaster is a treating physician whose opinions presumptively are entitled to controlling weight.[10] He is a medical doctor

---

[9] To meet the requirement of either of the above Listings, an individual must exhibit at least "marked" difficulties or limitations in at least two of the following "B" Criteria:

   1. Marked restriction of activities of daily living;

   2. Marked difficulties in maintaining social functioning;

   3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere);

   4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04(B), 12.06(B).

   Dr. MacMaster opined that Smith has "marked" limitations in his ability to interact appropriately with the public and interact appropriately with supervisor(s)(functional limitations in Social Interaction). Dr. MacMaster also concluded that Smith has a "marked" limitation in his ability to respond appropriately to usual work situations and to changes in a routine work setting (a functional limitation in maintaining concentration, persistence or pace).

[10] Administrative law judges must give controlling weight to opinions of "treating sources" regarding the nature and severity of impairments, provided they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the case record. *See* 20 C.F.R. § 404.1527(c)(2).

specializing in the psychiatric field of mental, emotional and behavioral disorders. Presumptively, his opinions carry more weight than opinions of other nontreating medical sources such as one-time consultative examiners and reviewing consultative medical sources like consultative psychologist Dr. Kamin.[11] Were ALJ Dummer to accept Dr. MacMaster's opinions as credible, it is reasonably possible that he would change his secondary "key factor" analysis findings with respect to severity of Smith's innate or congenital limitations and also his capacity for work absent drug addiction and alcoholism.[12]

### 3. Good Cause For Failure to Present Evidence Earlier

The only remaining issue, then, is whether good cause excuses failure to incorporate Dr. MacMaster's evidence into the record in a prior proceeding. *Pollard* suggests that good cause automatically exists when newly-submitted evidence did not exist at the time of the administrative hearing. *Pollard*, 377 F.3d at 194. Other cases, however, suggest that the good cause burden is more stringent. *See, e.g, Lisa*, 940 F.2d at 45 ("[Claimant] must go beyond showing that the proffered evidence did not exist during the pendency of the administrative proceeding. Rather, she must establish good cause for failing to *produce and present* the evidence at that time.") (emphasis added). Their rationale is mirrored in *Clem v. Sullivan*, 894 F.2d 328, 332 (9th Cir.1990) wherein the court declared that "[a] claimant does not meet the good cause

---

[11] *See, e.g.,* 20 C.F.R. § 404.1527(c)(1).

[12] No inference is intended that the Commissioner should or probably will find Dr. MacMaster's opinions more credible and persuasive than opinions upon which ALJ Dummer relied. *See*, n. 5, *supra*. The Commissioner may have valid reasons to reject Dr. MacMaster's opinions after full consideration in accordance with the governing regulation. *See* 20 C.F.R. § 404.1527(c). A reviewing court, however, cannot function as tribunal of first instance; the amount of weight to be afforded Dr. MacMaster's opinions, if any, is a matter within the exclusive prerogative of the Commissioner.

requirement simply by obtaining a more favorable report from an expert witness once his claim is denied. *The claimant must establish good cause for not seeking the expert's opinion prior to the denial of his claim.*") (citation omitted, emphasis added). This seems a better rule, as it is more in accord with congressional intent to discourage easy second bites at the apple and unending merry-go-rounds with no finality to administrative and judicial determinations.

As a layman, Smith likely is unenlightened as to his duty to accompany proffered new evidence with a showing of good cause. Accordingly, Smith does not present a statement of good cause, as would a lawyer skilled in the art. While *pro se* status does not excuse the necessity for showing good cause, Smith's mere silence in the matter is an insufficient reason for the court to find that he fails to demonstrate good cause. A reviewing court's duty to conduct a searching inquiry of the record, and, in *pro se* cases, to construe it to raise the strongest arguments, requires that the court independently address the issue.

Although the question is close, the record, liberally construed, shows good cause why Smith did not produce and present Dr. MacMaster's evidence while his claim was pending administratively. After ALJ Dummer issued her decision on August 31, 2011, Smith filed a Request for Review of Hearing Decision on November 3, 2011. (T. 11). Therein, he requested Appeals Council review because "additional evidence was not available at that time." (T. 11). The implication of that statement is that Smith wanted to present additional evidence then in hand, but not available when ALJ Dummer issued her decision.

Smith followed through, and submitted to the Appeals Council additional evidence consisting of an October 20, 2011 "Medical Source Statement of Ability

to do Work Related Activities"[13] from a source identified in the official record only as "Dr. Yeager." (T. 2).[14] Based on assertions in Smith's brief, Dr. Yeager was his Veterans Affairs treating physician at that time.

Neither that statement nor its contents is in the official administrative record. However, Dr. Yeager's evidence is referenced in the Appeals Council's denial of Smith's request for review dated only five days later on October 25, 2012:

> "We looked at the . . . *the medical source statement of ability to do work related activities completed by Dr. Yeager dated October 20, 2011.* The Administrative Law Judge decided your case through August 31, 2011. *This new information is about a later time.* Therefore, it does not affect the decision about whether you were disabled beginning on or before August 31, 2011. If you want us to consider whether you were disabled after August 31, 2011, you need to apply again. *We are returning the evidence to you to use in your new claim.*"

(T. 2) (emphasis added). The Appeals Council obviously considered Dr. Yeager's assessments of Smith's work-related abilities as irrelevant to the time period then under consideration because it was *dated* after August 31, 2011. It also is fair to conclude that the Appeals Council viewed Dr. Yeager's assessments as potentially helpful to Smith were he to file a new claim.

When the Appeals Council denied his request to review, Smith promptly obtained a new Medical Source Statement from Dr. MacMaster who, according to Smith, by then had replaced Dr. Yeager as his Veterans Affairs treating physician. (T. 8-10, also Docket No. 14, p. 8). On December 4, 2012, Smith sent

---

[13] Form HA-1152.

[14] Smith also tendered what the record reflects as "Syracuse examination records" dated March 30, 2012. (T. 2). Since those records do not figure into the court's analysis, they are not further described are discussed.

by facsimile a request to re-open his request for appeal to the Social Security Administration. (T. 5-10). Therein, Smith stated:

> At this time I would like to re-open my Request for Appeal with further supporting evidence. *Main reason being that the form HA-1152(4/00) [medical source statement form] was out dated and did not ask for an onset date.*

(T. 7) (emphasis added).[15]

By connecting these dots, one can discern that – *while his case was still pending administratively* – Smith attempted to get to the Appeals Council additional information relating to the critical question of whether his drug addiction and alcoholism were contributing factors material to his disability. Neither Dr. Yeager's nor Dr. MacMaster's evidence on that subject was available at the time of the evidentiary hearing. Dr. Yeager's evidence (not available for court review) was not considered by the Appeals Council because it was interpreted as pertaining only to Smith's current condition rather than his condition during the time under consideration by ALJ Dummer. (T. 2). Smith immediately undertook to clarify this ambiguity, but in the interim, his treating source contact at Veterans Affairs changed from Dr. Yeager to Dr. MacMaster who did provide a medical statement directly relevant to Smith's disability

---

[15]   Smith's *pro se* brief is consistent, but elaborates as follows:

```
On page 2.  10/25/2012 the Appeals Council denied a review.  Sating
(sic) that the Medical Source Statement of Ability to do Work
Related Activities completed by Dr. Yeager did not have an onset
date and that it was not within the time frame of the ALJ's
decision.   The AC did not consider . . . the Medical Source
Statement of Ability to do Work Related Activities on page 8 in
which Dr McMaster (sic) (Dr. Yeager's replacement) opinioned (sic)
that the  Plaintiffs (sic) impairments would remain without the
alcohol or drugs or his opinion as to when the plaintiffs (sic)
limitations were first present 8/9/2010 which was within the ALJ's
decision.  page 9.
```

(Dkt. No. 14, p. 8).

during the relevant period, and an opinion that Smith's drug addiction and alcoholism are not contributing factors material to his disability. (T. 9).

Smith, perhaps, had ample time to procure relevant DAA Amendment evidence from Veterans Affairs treating physicians prior to the administrative hearing and Appeals Council's denial. But to conclude that Smith failed to present such evidence because of carelessness, inattention or willful disregard would require the court to indulge in a presumption that Smith, who undisputably was mentally disabled and proceeding *pro se*, was or should have been aware of the DAA Amendment and of his burden to show that drug addiction and alcoholism were not contributing factors material to his disability. Such a presumption is unrealistic, and to fault or punish Smith for not producing DAA Amendment evidence at the evidentiary hearing would be unnecessarily harsh, if not arbitrary, especially considering that in *pro se* administrative proceedings, the burden of developing a full record rests as heavily on an administrative law judge as on a claimant.[16]

A more reasonable and just construction is that when Smith became acutely aware of the DAA Amendment issue, he moved with due diligence to satisfy his evidentiary burden with additional evidence. He first furnished the Appeals Council with evidence from Dr. Yeager while the case remained under active consideration, and, when that effort failed on a temporal technicality, he promptly furnished the Appeals Council with curative evidence from Dr.

---

[16] When a claimant is unrepresented by counsel, an administrative law judge is under a heightened duty "to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Hankerson v. Harris*, 636 F.2d 893, 895 (2d Cir. 1980) (internal citations and quotations omitted); *accord Echevarria v. Secretary of Health & Human Servs., 685* F.2d 751, 755 (2d Cir. 1982). A reviewing court must determine whether the administrative law judge "adequately protect[ed] the rights of [a] *pro se* litigant *by ensuring that all of the relevant facts [are] sufficiently developed and considered*." *Hankerson*, 636 F.2d at 895 (emphasis added).

MacMaster. The fact that Dr. MacMaster substituted as Smith's attending psychiatrist with Veterans Affairs by that time was a matter beyond Smith's control.

Given all these circumstances, and especially in light of Smith's *pro se* status and undisputed mental disabilities under which he labored, a finding is warranted that the record reflects good cause for Smith not having produced Dr. MacMaster's evidence into the record earlier.

## VI. Recommendations

1. Smith's application for disability insurance benefits should be remanded pursuant to Sentence Six of 42 U.S.C. § 405g with instructions that the Commissioner consider additional evidence from Dr. MacMaster (discussed above) and any other evidence the Commissioner desires to obtain and consider on the issue of whether Smith's drug addiction and alcoholism contribute materially to his disability.

2. This case should be administratively closed during proceedings on remand, subject to reopening on request of a party after a final administrative decision.[17]

---

[17] Sentence six remands are interlocutory and non-appealable orders because the reviewing court has not made a substantive ruling as to the correctness of the Commissioner's decision. *Raitport v. Callahan*, 183 F.3d 101, 104 (2d Cir. 1999); *accord Brown v. Barnhart*, 85 Fed. App'x 249, 250 n.1 (2d Cir. 2004) (summary order). Rather, the district court retains jurisdiction over the action pending further development and consideration by the Commissioner. *See Raitport*, 183 F.3d at 104 (citing *Zambrana v. Califano*, 651 F.2d 842, 844 (2d Cir. 1981)); *see also Melkonyan v. Sullivan*, 501 U.S. 89, 98 (1991)("[F]ollowing a sentence six remand, the Secretary must return to the district court to 'file with the court any such additional or modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based.' ").

## VII. Objections

Parties have fourteen (14) days to file specific, written objections to the Report and Recommendation. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THE REPORT, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**

*Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Graham v. City of New York*, 443 Fed. App'x 657, 658 (2d Cir. 2011) (summary order); *FDIC v. Hillcrest Assocs.*, 66 F.3d 566, 569 (2d Cir. 1995); *see also* 28 U.S.C. § 636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Signed on the __18__ day of __March__ 2014.

*Earl S. Hines*
Earl S. Hines
United States Magistrate Judge